**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02565-WJM-KMT

SIGNE MARTIN,

    Plaintiff,

v.

CANON BUSINESS SOLUTIONS, INC.

    Defendant.

---

## AMENDED[1] ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Signe Martin ("Plaintiff") brings this action against her former employer, Canon Business Solutions, Inc. ("Defendant" or "Canon"), alleging violation of her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, gender and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, breach of contract, and promissory estoppel.  (Am. Compl. (ECF No. 14) pp. 5-7.)

Before the Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 39.)  For the reasons set forth below, the Motion is granted in part and denied in part.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact

---

[1] The Conclusion of the Court's September 9, 2013 is amended to clarify which theories Plaintiff's FMLA retaliation and gender and pregnancy discrimination claims survive summary judgment.

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND

Plaintiff Signe Martin was employed by Defendant Canon Business Solutions from 1997 until 2011. (Pl.'s Decl. (ECF No. 57-2) ¶ 2.) Plaintiff was a sales representative who helped offices streamline their copy/print/scan/fax functions with Canon office equipment and software. (*Id.*) Plaintiff's supervisors were Bryan Cox and Dave Coffman.

The performance of sales representatives was primarily judged by their revenues, and Plaintiff's salary was primarily driven by the commission from her sales. (*Id.* ¶¶ 2-3.) In 2007, Plaintiff was one of the top sales representatives nationally and sold 188% of her yearly quota. (*Id.* ¶ 9.) In both 2006 and 2007, Plaintiff won a President's Club

award for being one of the highest grossing sales representatives in the country. (*Id.* ¶ 15.) Out of sixteen categories in her 2007 performance review, Plaintiff was given the highest mark in five and the second highest in six. (ECF No. 57-2 at 63-64.) Plaintiff received no complaints about her performance prior to 2009. (Pl.'s Decl. ¶ 57.)

In early April of 2009, Plaintiff announced that she was pregnant. (Pl.'s Dep. (ECF No. 39-5) p. 156.) On April 7, 2009, Cox sent Plaintiff an e-mail expressing his displeasure with Plaintiff's performance, as she was only at 14% of her quota for the year. (ECF No. 39-1.) In July 2009, Coffman contacted Holland and Hart, one of Plaintiff's clients with whom she was working on a major transaction, and informed that law firm client that Cox was permanently reassigning the account to another sales representative because Plaintiff was going out on FMLA leave. (ECF No. 57-2; Fernandez Decl. (ECF No. 57-1) ¶ 6.) Because of this reassignment, the relationship between Defendant and Holland and Hart was terminated. (Fernandez Decl. ¶ 9.)

In August 2009, Cox issued a formal written warning to Plaintiff. (ECF No. 39-1 at 29.) At that point, Plaintiff was at 39% of her quota for the year. (*Id.*) Cox demanded that Plaintiff be at 100% of her quota for each month for the rest of the year and placed other requirements on her work. (*Id.*) Plaintiff was warned that failure to make reasonable progress or otherwise comply would result in further corrective action, up to and including termination. (*Id.*)

Plaintiff took FMLA leave, as she requested, from September 10, 2009 until October 21, 2009. (Pl.'s Dep. at 31-32.) During her leave, Defendant cut off Plaintiff's access to her work e-mail account and barred her from contacting clients. (Pl.'s Decl. ¶ 56.) This prohibition caused Plaintiff to lose a number of deals that would have resulted

in significant commissions. (*Id.* ¶¶ 10-11.) Plaintiff's performance expectations, including her monthly and yearly quotas, were not adjusted to account for her FMLA leave. (ECF No. 39-1 at 29.)

Upon Plaintiff's return to work, she requested a place to express breast milk during the work day. (Pl.'s Decl. ¶ 21.) Coffman told her to use the bathroom, but she declined because it was not sanitary and lacked a power source. (*Id.*) Plaintiff ended up expressing breast milk in her car twice a day, which resulted in her suffering multiple bouts of mastitis and missing days of work. (Martin Decl. ¶ 1; ECF No. 39-1 at 41.) Defendant did not provide a place to express breast milk until March of 2010. (*Id.*)

Plaintiff was reprimanded in February 2010. (ECF No. 39-1 at 35.) Plaintiff was warned that she was required to maintain 100% attainment of her monthly quota and that she was only at 44% of her quota in January 2010. (*Id.*)

In March 2010, Plaintiff was again reprimanded. (ECF No. 39-1 at 41.) Cox informed her that he believed she had "excessive absenteeism year to date." (*Id.*) Although all of Plaintiff's absences had been approved, she was warned that failure to show improvement in her attendance would result in further corrective action, up to and including termination. (*Id.*)

In October 2010, Plaintiff had the third-highest revenue of all sales representatives. (Coffman Dep. (ECF No. 57-1) p. 111.) Despite this, in November 2010, Defendant reassigned a number of her commission-based revenue-producing accounts. (Pl.'s Decl. ¶ 22; ECF No. 57-2 at 39-59.) The accounts Plaintiff kept after this reassignment had little income potential. (Pl.'s Decl. ¶¶ 25-49.) Plaintiff's male co-workers lost significantly fewer accounts during this reassignment process. (Pl.'s Decl. ¶

51.)

Plaintiff resigned from her position with Defendant on February 2, 2011, effective February 16, 2011. (Cox Decl. ¶ 7.) On these facts, she initiated this lawsuit on September 30, 2011. (ECF No. 1.)

### III. ANALYSIS

Plaintiff's Amended Complaint brings the following causes of action: (1) interference with the right to take leave under the FMLA; (2) discrimination and retaliation for taking FMLA leave; (3) gender and pregnancy discrimination; (4) breach of contract; and (5) promissory estoppel.

Defendant moves for summary judgment on all of Plaintiff's claims. (ECF No. 39.) Plaintiff's Opposition to the Motion states that she "does not oppose this motion as to her pleaded-in-alternative common-law claims, Counts IV and V." (ECF No. 57 at 4.) As such, the Court grants Defendant's Motion as to the breach of contract and promissory estoppel claims. The Court will address the remaining claims in turn below.

### A. FMLA Claims

Plaintiff alleges that Defendant interfered with her right to take FMLA leave, and that she was discriminated against and subject to retaliation for taking FMLA leave. (Am. Compl. ¶¶ 41-53.) Defendant contends that Plaintiff was permitted to take her full FMLA leave and denies any discrimination or retaliation. (ECF No. 39.)

The FMLA provides, in relevant part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position

of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA's prohibition against interference also "prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

The Tenth Circuit recognizes two theories of recovery under the FMLA: (1) an interference (or entitlement) theory arising from 29 U.S.C. § 2615(a)(1); and (2) a retaliation (or discrimination) theory arising from 29 U.S.C. § 2615(a)(2). *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). "The distinction between these two theories is important because the elements . . . that apply to § 2615(a)(1) claims differ from those that apply to § 2615(a)(2) claims." *Id.*

In this case, Plaintiff alleges that Defendant both interfered with her right to FMLA leave and retaliated against her for invoking her right to such leave. Defendant moves for summary judgment as to both claims. The Court will address each in turn below.

    1.    <u>Interference with Right to Take FMLA Leave</u>

Among other prohibitions, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the Act. *Id.* § 2615(a)(1). To prevail on a claim of interference under the FMLA, a plaintiff must allege: "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with h[er] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of h[er] FMLA rights." *Campbell v. Gambro Healthcare*, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007).

Defendant does not dispute that Plaintiff was entitled to take FMLA leave and,

6

therefore, the first prong of this analysis is satisfied. With regard to the second prong, Defendant contends that because it did not deny any portions of Plaintiff's request for FMLA leave, it did not "interfere" with her right to take such leave. (ECF No. 39 at 38.)

Although the FMLA does not define "interference," the relevant Department of Labor ("DOL") regulations provide that "interference" includes situations where the employer discourages an employee from applying for leave:

> Any violations of the [FMLA] constitute interfering with, restraining, or denying the exercise of rights provided by the [FMLA]. "Interfering with" the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, *but discouraging an employee from using such leave.*

29 C.F.R. § 825.220(b) (emphasis added). The Tenth Circuit has recognized (albeit in an unpublished decision) that an employer who provides a strong disincentive for taking FMLA leave has interfered with the employee's FMLA rights. *See Mardis v. Cent. Nat'l Bank & Trust of Enid*, 1999 WL 218903, *2 (10th Cir. April 15, 1999) (holding that summary judgment in favor of the employer was not proper where employer threatened to revoke employee's accrued sick leave if she took FMLA leave, as the employer's actions "would operate as a powerful disincentive to assertion of that employee's rights under the FMLA."). Other circuits have also recognized that attaching negative consequences to the invocation of FMLA leave is sufficient to sustain a claim for FMLA interference. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) ("When an employer attaches negative consequences to the exercise of protected rights, it has 'chilled' the employee's willingness to exercise those rights because he or she does not want to be fired or disciplined for doing so.") (citing *Bachelder v. Am. West*

*Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001) (holding that the FMLA's anti-interference provision bars conduct that "'tends to chill' an employee's willingness to exercise [his] FMLA rights").

Given this law, the Court has little difficulty rejecting Defendant's argument that Plaintiff cannot show that her FMLA rights were interfered with simply because she was permitted to take all of the FMLA leave she requested. Rather, the Court finds that Plaintiff has presented sufficient evidence to permit a reasonable juror to find that Defendant attached such negative consequences to Plaintiff's invocation of her FMLA leave that there was a "powerful disincentive" for taking leave. For example, within days of notifying Defendant of her pregnancy and accompanying need to take FMLA leave, Plaintiff was given a written warning which sharply criticized her and called her work "unacceptable". (Pl.'s Dep. at 156-57; ECF No. 39-1 at 31.)

Additionally, before Plaintiff's FMLA leave began, Defendant attempted to remove one of her larger accounts. (Fernandez Decl. ¶ 6.) As Plaintiff was paid, in large part, based on commission, losing a major account could have a significant impact on her compensation. (Cox Dep. at 30.) Therefore, the Court finds that Plaintiff has established a genuine dispute of material fact as to whether Defendant interfered with her right to take FMLA leave. *See Mueller v. J.P. Morgan Chase & Co.*, 2007 WL 915160, *13 (N.D. Ohio March 23, 2007) (denying summary judgment to the employer where the employee/ plaintiff received a poor performance rating while waiting for her FMLA claim to be approved).

With respect to the third prong, Plaintiff has presented evidence that directly links some of the adverse actions taken against Plaintiff to her invocation of FMLA leave. The

most blatant example is the evidence showing that Plaintiff's supervisor attempted to take away a major customer on the basis that she was going to be out on leave. (Fernandez Decl. ¶ 6.)  This evidence is sufficient to create a genuine dispute as to whether Defendant's adverse actions were linked to Plaintiff's request for FMLA leave.

On the interference claim, the only basis for summary judgment sufficiently argued in Defendant's Motion is that Plaintiff received all of the leave she requested and, therefore, Defendant did not interfere with her right to leave.[2]  As the Court has rejected this argument and found that Plaintiff has presented sufficient evidence to permit a reasonable juror to find in Plaintiff's favor on all three prongs of her interference claim, Defendant's Motion is denied as to the interference claim.

2.      Retaliation

FMLA retaliation claims are governed by the familiar *McDonnell-Douglas* analysis. *Metzler*, 464 F.3d at 1170.  Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination, hostile work environment or retaliation. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-retaliatory basis for its employment decision.  *Id.*  If Defendant does so,

---

[2]  In a footnote in its opening brief, Defendant states: "Plaintiff's interference claim also fails for the separate reason that Plaintiff would have been subject to the same employment actions had she not taken leave." (ECF No. 39 at 38 n.38.)  The Court finds this cursory mention insufficient to raise this argument.  *See Echo Acceptance Corp. v. Household Retail Servs.*, 267 F.3d 1068, 1077 n.5 (10th Cir. 2001) (courts have "consistently held that arguments inadequately briefed in the opening brief are waived"); *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 847, 880 n.9 (10th Cir. 1997) (holding that party who noted issue and made "several broad, conclusory statements" on appeal waived argument for failure to develop).

the inference of retaliation drops out and the burden shifts back to Plaintiff, who must offer evidence to show that her FMLA leave was a determinative factor in the employment decision or that Defendant's non-retaliatory reason was merely pretext. *Id.*

The *prima facie* standard for Plaintiff's FMLA retaliation claim is: "(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Campbell*, 478 F.3d at 1287. There is no dispute in this case that Plaintiff engaged in protected activity by taking FMLA leave. Thus, the Court will address only the second and third prongs of the test.

        a.    *Adverse Employment Action*

The Tenth Circuit broadly construes what constitutes an adverse employment action. An adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). However, to qualify as an adverse employment action, a decision must constitute a "*significant* change in employment status, such as a hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012)(emphasis in original). Plaintiff alleges five adverse employment actions: (1) a series of written warnings; (2) losing commission-providing clients; (3) losing a fixed-criteria sales bonus; (4) a hostile work environment; and (5) constructive discharge.

With respect to the written warnings Plaintiff received, there is no evidence that they impacted her earnings, benefits, job responsibilities, or work conditions. There is

also no evidence that Canon had a progressive discipline policy, which makes this case distinguishable from those cited by Plaintiff in her brief. (*See* ECF No. 57 at 31 (citing *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998); *Toth v. Gates Rubber Co.*, 2000 WL 796068, *9 (10th Cir. 2000)). As such, the Court finds that Plaintiff has failed to show a genuine dispute of fact as to whether the written warnings alone constitute an adverse employment action. However, the Court believes the written warnings are evidence supporting Plaintiff's allegations that she was subjected to a hostile work environment and that such environment was itself an adverse employment action.

With regard to the other four adverse employment actions, the Court finds that Plaintiff has shown a genuine dispute of fact sufficient to meet her *prima facie* burden. Plaintiff has come forward with facts showing that she lost commission-based clients and was denied a bonus, both of which impacted her earnings. Plaintiff has also shown that the work conditions she faced after notifying Defendant of her intent to take FMLA leave were objectively severe and pervasive[3], which can constitute an adverse employment action. *See Gunnel v. Utah Valley State Coll.*, 152 F.3d 1253, 1265-65 (10th Cir. 1998). Finally, Plaintiff has brought forth sufficient facts to permit a reasonable juror to find that she was constructively discharged, which is indisputably an adverse employment action. *See Strickland v. United Parcel Serv.*, 555 F.3d 1224, 1230 (10th Cir. 2009).

---

[3] The Court notes that the legal standard for a hostile work environment requires only that the offending behavior be so severe or pervasive so as to alter the conditions of the victim's employment. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47 (2004); *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 712 (10th Cir. 2012). In this case, however, there is sufficient evidence in the record to permit a reasonable juror to conclude that Plaintiff's work environment was both severe and pervasive.

      b.     *Causal Connection*

As to the third prong of the *prima facie* standard, the Court finds that Plaintiff has met her burden with respect to all of her alleged adverse employment actions other than the fixed-criteria bonus. The written warnings, which support Plaintiff's claim of a hostile work environment, began almost immediately after Plaintiff notified Defendant of her intent to take FMLA leave. (Pl.'s Dep. at 156-57; ECF No. 39-1 at 31.) There is evidence directly linking the removal of clients to Plaintiff's intent to take leave. (Fernandez Decl. ¶ 6.) Finally, all of the events that led to Plaintiff's constructive discharge began when Plaintiff invoked her right to leave.

However, with respect to the fixed-criteria bonus, Plaintiff has failed to meet the causation burden. The fixed-criteria bonus was given out in January 2011. (Pl.'s Decl. ¶ 18.) Plaintiff's FMLA leave occurred in September and October of 2009. (Cox Decl. ¶ 21.) Without other evidence of a causal relationship, these events are too remote to allow the timing alone to satisfy Plaintiff's *prima facie* burden. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). Because Plaintiff indeed offers no other evidence showing that the denial of the bonus was caused by her invocation of her right to FMLA leave, she has failed to meet her *prima facie* burden in this regard.

Therefore, the Court finds that Plaintiff has met her *prima facie* burden with respect to her allegation that the loss of her commission-based clients, her hostile work environment, and her constructive discharge were retaliation for taking FMLA leave.

      c.     *Pretext*

Defendant has set forth legitimate, non-discriminatory bases for each of the alleged adverse employment actions. (ECF No. 39 at 36.) Defendant alleges that

Plaintiff was reprimanded because of her poor performance and excessive absenteeism. (*Id.*) Defendant claims that it routinely reallocated accounts and that doing so was within management discretion. (*Id.*)

Because these are legitimate bases for the adverse employment actions taken against Plaintiff, Plaintiff's FMLA retaliation claim can survive summary judgment only if she has produced evidence that would allow a reasonable juror to find that the Defendant's non-discriminatory reasons are pretextual or otherwise "unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). A plaintiff can meet this burden with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted). In determining whether a plaintiff has shown pretext, the Court must consider the plaintiff's evidence in its totality. *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008) ("Orr II").

The Court notes that, in a retaliation claim, the evidence of causation and pretext often overlaps. *See Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1122 (10th Cir. 2001) (holding that a plaintiff may rely on the same evidence to prove her *prima facie* case and show pretext). Therefore, the Court incorporates its analysis of the causation factor here and finds that this evidence is strong support for Plaintiff's pretext argument. In addition, Plaintiff has shown that Defendant repeatedly treated Plaintiff differently than her similarly-situated co-workers who did not take FMLA leave, which is classic pretext evidence. *See Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir.

2005) ("[A] plaintiff may show pretext by providing evidence that he was treated differently from other similarly situated, nonprotected employees"). Plaintiff has also presented evidence that Defendant violated its own policies by the timing and manner in which Plaintiff was disciplined, which is another method of showing pretext. *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008) (procedural irregularities can be evidence of pretext).

Accordingly, the Court finds that Plaintiff has met her burden of showing a genuine dispute of material fact as to whether the removal of her commission-based customers, her hostile work environment, and her constructive discharge were in retaliation for her invocation of her right to FMLA leave. As such, Defendant's Motion is denied as to these claims.

**B.     Gender and Pregnancy Discrimination**

In the Tenth Circuit, pregnancy discrimination claims are essentially the equivalent of a gender discrimination claim. *See Orr II*, 531 F.3d at 1214. The *McDonnell-Douglas* burden-shifting framework discussed above applies to this claim. *Id.*

1.     *Prima Facie* Burden

To meet her *prima facie* burden with respect to her pregnancy and gender discrimination claim, Plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) she was treated differently from similarly situated employees. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) ("Orr I"). There is no dispute that Plaintiff, as a female who recently gave birth to a child, was a member of a protected class. With respect to adverse employment actions, the Court has previously found that Plaintiff has met her burden of showing that the

14

removal of her commission-based clients, the denial of her bonus, her hostile work environment[4], and her retaliatory discharge were adverse employment actions. (*See* Part III.A.2.a., above.)

Therefore, the only issue remaining is whether Plaintiff has met her *prima facie* burden of showing that she was treated differently from similarly situated employees. Defendant contends that Plaintiff was treated similarly to similarly situated male employees and, therefore, cannot meet her *prima facie* burden.[5] (ECF No. 39 at 34-35.)

---

[4] Plaintiff's allegation of pregnancy discrimination based on a hostile work environment differs from the discussion above in that Plaintiff partially relies on the environment created by Defendant when it denied her access to appropriate facilities for expressing breast milk. The parties vigorously dispute whether this issue is relevant and can be considered by the Court in conjunction with Plaintiff's pregnancy discrimination claim. (ECF No. 39 at 29-31; ECF No. 57 at 37-38.) Notably, the only cases cited in support of Defendant's argument that access to appropriate facilities does not fall within the Pregnancy Discrimination Act are other District of Colorado decisions, which are not binding on the Court. *See Garcia v. Tyson Foods, Inc.*, 534 F.3d 1320, 1329 (10th Cir. 2008). The Court disagrees with the analysis set forth in *Fejes v. Gilpin Ventures, Inc.*, 960 F. Supp. 1487 (D. Colo. 1997), and finds *Falk v. City of Glendale*, 2012 WL 2390556 (D. Colo. June 25, 2012) distinguishable. Instead, the Court agrees with a recent decision of the Fifth Circuit in which it held that "discriminating against a woman who is lactating or expressing breast milk violates Title VII and the PDA." *E.E.O.C. v. Houston Funding II, Ltd.*, 717 F.3d 425, 430 (5th Cir. 2013). Because human physiology is such that one only lactates as a by-product of pregnancy, the Court has little difficulty concluding that accommodation of the need to express breast milk "readily fits into a reasonable definition of 'pregnancy, childbirth, or related medical conditions.'" *Id.* As such, Plaintiff's access to facilities to express breast milk is relevant to whether Defendant discriminated against her based on her pregnancy.

[5] The Court notes that, because Plaintiff alleges both gender and pregnancy discrimination, the relevant question is not only whether she was treated differently than her male counterparts. Plaintiff may count non-pregnant women as comparators as well. *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.3d 944, 948 (10th Cir. 1992) ("The comparison is . . . between pregnant and nonpregnant workers, not between men and women.").

However, the record shows that, in many of the events which form the basis for Plaintiff's claims of hostile work environment and constructive discharge, Plaintiff was treated differently from her similarly situated co-workers. For example, Plaintiff was disciplined earlier and more often than some of the males who were similarly failing to meet their sales quotas. (Pl.'s Decl. ¶ 19.) Plaintiff was stripped of her religious, education, and non-profit accounts while her male co-workers were permitted to retain theirs. (Pl.'s Decl. ¶ 51; ECF No. 57-2 at 61.) Plaintiff has also shown that the removal of at least one account was directly related to her pregnancy. (Fernandez Decl. ¶ 6.) This is sufficient to meet Plaintiff's *prima facie* burden.

2. Pretext

Defendant asserts the same bases set forth above as to why it removed Plaintiff's accounts and disciplined her. As these are legitimate, non-discriminatory bases for its employment decisions, the Court must consider whether Plaintiff has shown that a reasonable juror could find that such explanations were pretext for discrimination.

The Court finds that she has met this burden. First, Plaintiff has presented sufficient evidence to permit a jury to question whether Plaintiff was performing poorly, and certainly whether she was performing more poorly than her similarly situated co-workers. Plaintiff has shown that, due to the economic climate in 2008-09, most of her co-workers were failing to meet quota, and that many were failing by a larger margin than she was. (ECF No. 57-2 at 14.) The record also shows that many of Plaintiff's more poorly performing co-workers were not disciplined. (ECF No. 57-2 at 14-16.) Similarly, Plaintiff has produced evidence which draws into question the truthfulness of the allegation that she was excessively absent or that any of her absences were

unauthorized. (Pl.'s Decl. ¶¶ 53-54; Cox Dep. at 93-94.) On this evidence, a juror could find that Defendant's allegations that Plaintiff was grossly underperforming and excessively absent were simply false and/or pretext for discrimination.

Additionally, the timing of many of Defendant's actions is suspect, which also goes to pretext.[6] Before Defendant knew she was pregnant, Plaintiff was given multiple awards as a top salesperson. (Pl.'s Decl. ¶ 15.) Plaintiff began getting reprimanded only days after she revealed her pregnancy. (ECF No. 39-1 at 31.) Additionally, Defendant reprimanded many of the male employees it now holds up as similarly situated to Plaintiff within weeks of this action being filed, the timing of which calls into question its motivation for issuing these reprimands. (Cox Decl. ¶¶ 43-46.)

On this and other evidence in the record, a reasonable juror could find that Defendant's proffered bases for taking adverse employment actions against Plaintiff were pretext for gender and pregnancy discrimination. As such, summary judgment on this claim is also not appropriate.

## IV. ANALYSIS

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED as to the following claims:

    A. Plaintiff's claims for breach of contract and promissory estoppel;

---

[6] While timing is typically evidence of pretext in a retaliation claim, it can also be relevant to a pregnancy discrimination claim. *See Brown v. YRC, Inc.*, 490 F. App'x 952, 959 (10th Cir. 2012) (finding sufficient evidence of pretext where employee was terminated only two weeks after supervisor expressed frustration with employee's impending maternity leave).

  B. Plaintiff's FMLA retaliation claim to the extent it relies on the written warnings and loss of a fixed-criteria bonus as adverse employment actions;

  C. Plaintiff's gender and pregnancy discrimination claim to the extent it relies on the written warnings as an adverse employment action;

2. In all other respects, Defendant's Motion for Summary Judgment is DENIED; and

3. This case remains set for a 5-day jury trial commencing on October 28, 2013. The Final Trial Preparation Conference will be held at 3:30 p.m. on October 10, 2013.

Dated this 10th day of September, 2013.

BY THE COURT:

William J. Martínez
United States District Judge